Cavanagh, J.
(dissenting). I respectfully dissent from the majority opinion in this case.
Today, the majority holds that in order to assess 15 points for predatory conduct under offense variable (OV) 10, MCL 777.40(1)(a), the victim’s vulnerability need not arise from the victim’s inherent or personal characteristics. Further, the majority concludes that the victim here qualified as a “vulnerable victim” because she was alone and outnumbered at night while defendant and his cohort hid in the bushes adjacent to the parking lot. Lastly, the majority holds that a defendant’s preoffense conduct need not have been directed *481 at a specific victim, even though MCL 777.40(3)(a) defines “predatory conduct” as “preoffense conduct directed at a victim for the primary purpose of victimization.” (Emphasis added.) I respectfully disagree and would hold that (1) the victim’s vulnerability for purposes of scoring OV 10 must be personal or inherent in the victim, (2) the victim in this case was not a “vulnerable victim” within the meaning of MCL 777.40(3)(c), and (3) the preoffense conduct engaged in by an offender for the primary purpose of victimization must be “directed at one or more specific victims .. . .” People v Cannon, 481 Mich 152, 162; 749 NW2d 257 (2008).[1] Accordingly, I would affirm the Court of Appeals’ reversal of defendant’s sentence and remand this case to the trial court for resentencing with instructions to assess zero points for OV 10.
I. VULNERABILITY
In my view, in order to assess 15 points for predatory conduct under OV 10, the readily apparent vulnerability exploited by the offender must relate to some inherent or personal characteristic of the victim. As this Court declared in Cannon, the exploitation of a vulnerable victim is a prerequisite for the assessment of points under OV 10. Id. at 156. Relying on the definition of “vulnerability” provided by MCL 777.40(3)(c), we held further that “points should be assessed under OV 10 only when it is readily apparent that a victim was ‘vulnerable,’ i.e., was susceptible to injury, physical restraint, persuasion, or temptation.” Id. at 158. Therefore, the first step when applying OV 10 is to ask *482 whether the victim was a “vulnerable victim” within the meaning of the statute. For assessing this threshold determination, Cannon provided a nonexhaustive list of considerations based on the statutory language to guide courts in assessing victim vulnerability:
(1) the victim’s physical disability, (2) the victim’s mental disability, (3) the victim’s youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [Id. at 158-159.]
Notably, all these factors relate to the victim’s inherent characteristics or personal situation and are independent of the victim’s external physical environment.[2] The majority’s conclusion that vulnerability need not be inherent in the victim is misguided because it is inconsistent with Cannon’s statutorily based threshold test for vulnerability under OV 10.
*483 Because I believe that the readily apparent vulnerability exploited by the offender must relate to some inherent or personal characteristic of the victim, I believe the Court of Appeals correctly held that the victim in this case was not a vulnerable victim, within the meaning of MCL 777.40(3)(c). Merely being alone and outnumbered in a parking lot at night does not relate to an inherent or personal characteristic, but is instead the product of the victim’s external environment.[3] And while hiding in the bushes may have increased defendant’s likelihood of success, it did not actively alter the victim’s state of inherent susceptibility.[4]
In my view, to hold that OV 10 does not depend on a victim’s inherent state of vulnerability will lead to overscoring because, under the common meaning of “vulnerability,” all victims were vulnerable. Had they not been, the crime would not have been successful. I can think of no situation in which a crime has been successful that it is not possible to point to specific facts of the offense to support the conclusion that the victim was “vulnerable,” as that term is commonly understood. In an effort to narrow such a broad applicability of OV 10, the Legislature chose to limit its application to only situations in which an offender exploited some inherent or personal characteristic of the victim. Accordingly, I believe that this victim was not a vulnerable victim for purposes of scoring OV 10.
*484 II. PREDATORY CONDUCT[5]
Even if I were to determine that this victim was vulnerable, I believe that nonetheless zero points should have been assessed for OV 10 because the preoffense conduct — hiding in the bushes waiting for a likely victim to happen along — was not directed at this particular victim.[6] In Cannon, a majority of this Court explained that when assessing points for predatory conduct, the preoffense conduct “must have been ‘directed at a victim’ before the offense was committed.” Cannon, 481 Mich at 160, quoting MCL 777.40(3)(a). Additionally, the second prong of the Cannon test for predatory conduct mandated that the preoffense conduct must have been “directed at one or more specific victims . . . .” Cannon, 481 Mich at 162. Today’s majority opinion, however, holds that the preoffense conduct need not be directed at a particular victim in order to assess 15 points for predatory conduct.[7]
*485 I disagree with the majority opinion’s boundless interpretation of “conduct directed at a victim” in MCL 777.40(3)(a) as meaning conduct directed at the “community at large.” Ante at 459-461. “Whenever possible, every word of a statute should be given meaning. And no word should be treated as surplusage or made nugatory.” Cannon, 481 Mich at 158 (quotation marks and citation omitted). In direct contravention of this accepted principle of statutory construction, however, the majority essentially deletes the phrase “directed at a victim” from the explicit definition of “predatory conduct” found in MCL 777.40(3)(a). Under the majority opinion, preoffense conduct need only have been engaged in for the primary purpose of eventually victimizing someone, but need not be directed at anyone in particular. This interpretation fails to give effect to the statute’s plain language.
I think the answer is simple concerning why the preoffense conduct must have been directed at a particular victim or group of victims: one cannot direct conduct at “a victim” without first identifying and selecting a victim. In addition, MCL 777.40(3)(c) defines “vulnerability” as “the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation,” and it is not possible to assess the “readily apparent susceptibility” of a victim until that victim is particularly identified. Therefore, I believe that the Cannon majority was correct in holding that the preoffense conduct must be “directed at one or more specific victims. . ..” Cannon, 481 Mich at 162 (emphasis added).
*486 The majority’s reliance on the differences between the definite and indefinite articles is difficult to understand when the statute so clearly provides that the conduct must be directed at a victim. See MCL 777.40(3)(a). The indefinite articles “a” or “an” have little meaning when taken out of context. In the context of MCL 777.40(3)(a), “a victim” means “any one” or “one of many” victims, and that is the only meaning that should be definitively attributed to the Legislature’s choice to use the indefinite instead of the definite article. To now hold that “a victim” actually means the “community at large” is simply not consistent with the statutory language.
I also disagree with the majority’s attempt to mitigate the potential damage caused by its boundless interpretation of “a victim” by declaring that 15 points may be assessed only for preoffense conduct that is “commonly understood as being ‘predatory’ in nature . . . .” Ante at 462. Although it is correct that when a term is not defined by statute, it must be interpreted according to its common meaning, MCL 8.3a; McCormick v Carrier, 487 Mich 180, 192; 795 NW2d 517 (2010), such is not the case here. Instead, the Legislature expressly defined “predatory conduct” as “conduct directed at a victim for the primary purpose of victimization.” MCL 777.40(3)(a). This statutory definition says nothing about how predatory conduct is commonly understood.
Finally, today’s majority decision creates difficulty distinguishing between mere planning and preparation to commit a crime and actual preoffense conduct that supports assessing points under OV 10 for predatory conduct. See Cannon, 481 Mich at 162 (“[T]he Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of- *487 the-mill planning to effect a crime . . . Before today’s decision, courts only needed to consider the preoffense conduct during the limited window of time between the selection of a particular victim and the time the offense conduct began. Because it is no longer necessary under the position of the majority that the conduct be directed at any specific victim, but only toward the community at large, courts must now consider all conduct the offender engaged in for the primary purpose of victimizing some eventual victim. In my view, rather than clarifying our OV 10 jurisprudence, today’s decision merely muddies the waters more.
I therefore respectfully dissent.

 While I did not join the Cannon majority in full, Cannon, 481 Mich at 163 (Cavanagh, J., concurring in part and dissenting in part), I agree that for purposes of scoring OV 10, the preoffense conduct must have been directed at one or more specific victims.

 While certain factors may at first blush seem substantively externalized, closer examination reveals that they too are premised on the victim’s inherent state of vulnerability. The existence of a domestic relationship and the offender’s abuse of his or her authority status over the victim both consider vulnerabilities that result from a preexisting relationship of trust or authority between the offender and the victim. This relationship renders the victim inherently more susceptible to an offender who chooses to exploit that relationship. Further, when an offender exploits a victim by his or her difference in size or strength, the relevance of this factor is premised on the victim’s size and strength, both of which are inherent and personal characteristics.
Additionally, I take issue with the majority’s declaration that differences in size or strength, or being intoxicated, drugged, asleep, or unconscious are “things that are largely within the victim’s own control.” Ante at 460. Differences in size or strength depend in large part on genetics — inherent characteristics over which the victim has no control. Further, being drugged, intoxicated, or asleep often may be induced by another — such as the use of a so-called date-rape drug. Likewise, being unconscious may be the result of an injury or ongoing medical treatment.

 I find it notable that when considering the types of vulnerabilities to include in MCL 777.40, the Legislature did not include one of the most obvious circumstances — being outnumbered — as a listed vulnerability. While certainly not dispositive, this supports my conclusion that the vulnerability must be inherent, focused on the victim, and not on independent externalities.

 Conversely, when an offender drugs an intended victim, he has actively altered the victim’s inherent state of susceptibility.

 While I agree generally with Justice Hathaway’s discussion of predatory conduct in part 1(B) of her partial dissent, I write separately to elaborate further on my position.

 On this point, I think the Court of Appeals clearly erred by holding that defendant’s choice of this specific victim to attack sufficed as preoffense conduct directed at the victim. Merely choosing a victim is not conduct directed at a victim.

 I think it is questionable for the majority to label as “clearly dictum” the statement in Cannon that the preoffense conduct must be directed at one or more specific victims. The whole point of the majority opinion in Cannon was to provide the correct framework for lower courts to apply when deciding whether to assess points for predatory conduct under OV 10. Cannon, 481 Mich at 154,161-163. The second prong of the analytical framework Cannon provided required that the preoffense conduct be “directed at one or more specific victims . . ..” Id. at 162. The majority argues that this portion of Cannon was “clearly dictum” because it was “not essential to [the] determination of the case in hand . . ..” Ante at 458 n 4 (quotation marks and citations omitted). I would, however, remind the majority that there were four employees in the restaurant robbed by the Cannon defendant and his cohorts, and, thus, when the majority in *485 Cannon outlined a structural paradigm for the trial court to apply on remand, it was essential that the trial court be clear on how to apply OV 10 to a crime involving multiple victims. I would not be so quick to label as dictum an essential prong of an analytical framework provided by this Court.